**CHRYSLER WORKERS
ASSOCIATION, et al.,
Plaintiffs,**

v.

**CHRYSLER CORPORATION, et
al., Defendants.**

No. C 84–7273.

United States District Court,
N.D. Ohio, W.D.

April 16, 1986.

Michael N. Vaporis, Toledo, Ohio, for plaintiffs.

Gerald Lackey, Thomas L. Dalrymple, John Mattimoe, Toledo, Ohio, for defendants.

## OPINION AND ORDER

JOHN W. POTTER, District Judge.

This matter is before the Court on Chrysler Corporation's (hereafter Chrysler) motion for summary judgment, plaintiffs' opposition thereto, Chrysler's reply, plaintiffs' surrebuttal, Chrysler's motion for leave to respond instanter thereto, the joint motion for summary judgment of defendants International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) and UAW Local Nos. 371, 1331, 1435, 2075 and 2147 (collectively hereafter Union or UAW), plaintiffs' opposition thereto, the Union's reply, plaintiffs' several surrebuttals, the Union's response thereto, the motion for summary judgment of defendant General Dynamics Land Systems, Inc. (hereafter GDLS) the Union and plaintiffs' respective responses thereto, the Union's motion to strike plaintiffs' jury demand, plaintiffs' opposition thereto, plaintiffs' motion for reconsideration of the Court's January 25, 1985 order, and plaintiffs' motion both for reconsideration of the Court's September 25, 1985 order and for leave to file a reply memorandum.

Plaintiff Chrysler Workers Association purportedly is a voluntary association organized for the asserted purpose of advocating certain rights of its members. The individual plaintiffs are former employees both of Chrysler Corporation and of Chrysler Defense, Inc., and they are members of defendant UAW Local Union No. 2075. In addition, plaintiffs presently are employees of GDLS at its Lima, Ohio tank plant. Defendant Chrysler Corporation is an employer in an industry affecting interstate commerce. Chrysler, *inter alia,* manufactures automobiles at its various production and assembly plant facilities including those located at Perrysburg, Ohio, Van Wert, Ohio, and New Castle, Indiana. Defendant International Union and defendant local unions are labor organizations in an industry affecting interstate commerce. The UAW is the exclusive collective bargaining representative for plaintiffs. Defendant General Dynamics Land Systems, Inc. is an employer in an industry affecting interstate commerce. In addition, GDLS, formerly known as Chrysler Defense, Inc., owns and operates the subject Lima, Ohio tank plant.

On October 25, 1979, Chrysler and the UAW entered into a production and maintenance collective bargaining agreement (hereafter 1979 agreement) which contained, *inter alia,* certain provisions relating to transfer opportunities under certain circumstances for laid-off employees. At the time the 1979 agreement became effective, plaintiffs were employees of Chrysler. During 1981 and 1982, the individual plaintiffs were indefinitely laid off at various Chrysler plants due to economic factors. Notwithstanding, Chrysler Defense, Inc.'s Lima, Ohio tank plant was maintaining or expanding its production level. Chrysler and Chrysler Defense, Inc. employees had rights under the collective bargaining agreement to transfer under specified conditions between plants of the national Chrysler-UAW bargaining unit. Pursuant to a work opportunity provision of the 1979 agreement (§ 65) which provided that workers who were indefinitely laid off from a Chrysler plant could transfer to another Chrysler plant, plaintiffs all transferred from other Chrysler plants to the Chrysler Lima, Ohio tank plant. With respect to an employee's "home plant," an employee who transferred, pursuant to the work opportunity provision, to another plant within the bargaining unit, retained contractual seniority rights and under cer-

tain specified conditions could return to his "home" Chrysler plant.

In early 1982, Chrysler spun off all of its military product operations as a separate subsidiary known as Chrysler Defense, Inc. Also, in early 1982, the UAW became aware that Chrysler was negotiating with General Dynamics Corporation for the sale of Chrysler Defense, Inc. During March of 1982, the UAW and General Dynamics reached an agreement embodied in writing which, in essence, provided that General Dynamics both would recognize the UAW as the bargaining agent for employees at plants formerly operated by Chrysler Defense, Inc. and would abide by the express provisions of the 1979 agreement as to former CDI employees until its expiration on September 14, 1982.

On or about March 16, 1982, Chrysler sold its total ownership stock shares of Chrysler Defense, Inc. which operated Chrysler's defense plants including the Lima, Ohio tank plant, to General Dynamics Corporation. General Dynamics both renamed Chrysler Defense, Inc. and incorporated its new business as General Dynamics Land Systems, Inc. (GDLS). Subsequently, GDLS agreed to honor both the principal and applicable terms of the 1979 agreement between Chrysler and the UAW until its expiration.

On September 14, 1982, the collective bargaining agreements both between the UAW and Chrysler and between the UAW and GDLS expired. The UAW and GDLS negotiated a new production and maintenance collective bargaining agreement which became effective September 27, 1982 and which expired September 14, 1985 (hereafter 1982 agreement), the terms and conditions of which governed each plaintiff's employment with GDLS. National negotiations between Chrysler and the UAW culminated in collective bargaining agreements of December 10, 1982 and September 5, 1983. The 1982 agreement between the UAW and GDLS did not contain any transfer provision either continuing the provisions of the 1979 agreement regarding return to "home" plants or regarding

transfer of a GDLS employee to another company.

Sometime subsequent to the aforesaid sale of Chrysler Defense, Inc. to General Dynamics, Chrysler, due to improved economic factors, began to expand its work force at certain of its plants, after which time plaintiffs sought to return from GDLS's Lima tank plant to their "home" Chrysler plants. Such attempts of plaintiffs were unsuccessful. In 1983 and 1984, several GDLS employees filed or sought to file grievances with respect to a perceived refusal to allow said employees to return to their "home" Chrysler plants. The Union did not process those grievances that were actually filed, nor would it file any grievance with respect to the "home" plant transfer issue. No GDLS employee at the Lima tank plant was indefinitely laid off between March, 1982 and September 14, 1982. As of March 23, 1984, the date this lawsuit was commenced, plaintiffs had not been separated from GDLS; rather, they continue to be employed by GDLS at the Lima, Ohio tank plant.

On March 23, 1984, plaintiffs commenced this labor action by filing their complaint with this Court. Fed.R.Civ.P. 3. Plaintiffs' complaint, as amended, alleges breach of the applicable collective bargaining agreements, breach of the Union's duty of fair representation, violation of the Union's constitution and bylaws and misrepresentation. Specifically, by their first cause of action plaintiffs allege, albeit implicitly, that Chrysler and the Union, in violation of the existing collective bargaining agreements, entered into surreptitious agreements which extinguished plaintiffs' rights to return to their "home" Chrysler plants. Plaintiffs claim that by unilaterally abrogating plaintiffs' "home" plant transfer rights, Chrysler breached the 1979 collective bargaining agreement and the Union breached its duty to the individually named plaintiffs to fairly represent them. By their second cause of action, plaintiffs allege that the Union further breached its duty of fair representation by its arbitrary, capricious and discriminatory handling of certain grievances which plaintiffs' either filed or attempted to file. Plaintiffs claim

that the manner in which the Union handled plaintiffs' grievances allowed Chrysler "to breach the collective bargaining agreement with impunity." By their third cause of action, plaintiffs allege that while simultaneously entering into an agreement in violation of the Union's constitution and bylaws with Chrysler and GDLS to the contrary, the Union "intentionally and/or negligently misrepresented to the Plaintffs ... that the sale of Chrysler Defense, Inc. to General Dynamics Corp. ... would have no adverse effect on their existing right to return to their 'home plants.'" Plaintiffs seek declaratory and injunctive relief, damages for lost wages, lost benefits, and lost seniority rights, punitive damages, and the costs of this action including reasonable attorney's fees.

Plaintiffs' lawsuit is what has come to be referred to as a hybrid § 301/fair representation action, see, e.g., *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 165, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983), which action is brought simultaneously against both plaintiffs' employer and their Union. Plaintiffs' suit against Chrysler rests on § 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185, for breach of the applicable collective bargaining agreement by an employer. *DelCostello*, 462 U.S. at 164, 103 S.Ct. at 2290. Plaintiffs' action against the Union is one both for breach of the Union's duty of fair representation and for the Union's violation of the constitution and bylaws. The duty of a union to fairly represent the members of a particular bargaining unit, which members it represents collectively, is judicially implied under Section 9(a) of the National Labor Relations Act (NLRA), 29 U.S.C. § 159(a). See *Storey v. Local 327, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers*, 759 F.2d 517, 518–19 (6th Cir.1985). Cf. *DelCostello*, 462 U.S. at 164, 103 S.Ct. at 2290; *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 46 n. 8, 99 S.Ct. 2121, 2125 n. 8, 60 L.Ed.2d 698 (1979); *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967); *Steele v. Louisville & Nashville Railroad Co.*, 323 U.S. 192,

202–04, 65 S.Ct. 226, 231–33, 89 L.Ed. 173 (1944).

Duty of fair representation claims include, *inter alia*, allegations of unfair, dishonest, perfunctory, arbitrary, or discriminatory treatment of workers by unions and allegations of discrimination based on membership status or dissident views. *DelCostello*, 462 U.S. at 164, 170, 103 S.Ct. at 2290, 2293. Plaintiffs claim that the Union violated provisions of its bylaws and constitution is brought under § 101 of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 411. Because plaintiffs' claims of breach of the collective bargaining agreement and of breach of the duty of fair representation "are inextricably interdependent, '[t]o prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their [loss of right to return with seniority to their "home" Chrysler plants] was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union.'" *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 67, 101 S.Ct. 1559, 1566, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring in judgment), *quoting, Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976). In such situations, an employee may, if he chooses, sue one defendant (the employer/company or the exclusive bargaining agent/union) and not the other; but, the case an employee-plaintiff must prove is the same whether he sues one, the other, or both. *DelCostello*, 462 U.S. at 151, 103 S.Ct. at 2283.

■ The Court's initial inquiry must be whether plaintiffs' misrepresentation claim is preempted by federal law. Whether a particular state cause of action or regulation may coexist with the comprehensive scheme of federal labor law depends on whether the conduct which a state seeks to regulate or to make the basis of liability is actually or arguably protected, prohibited, or regulated by federal labor law. See *Local 926, International Union of Operating Engineers, AFL–CIO v. Jones*, 460 U.S. 669, 675–76, 103 S.Ct. 1453, 1458–59, 75 L.Ed.2d 368 (1983). If the conduct at

issue is arguably so prohibited, protected, or regulated, otherwise applicable state law and procedures are ordinarily preempted. *Id.*, at 676, 103 S.Ct. at 1458, *citing, San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959); *Sears, Roebuck & Co. v. Carpenters*, 436 U.S. 180, 187–90, 98 S.Ct. 1745, 1752–54, 56 L.Ed.2d 209 (1978), and *Farmer v. Carpenters*, 430 U.S. 290, 296, 97 S.Ct. 1056, 1061, 51 L.Ed.2d 338 (1977).

■ It is clear from the face of plaintiffs' second amended complaint that plaintiffs' hybrid § 301/fair representation claim (first, second, and third causes of action) and plaintiffs' state law misrepresentation claim (third cause of action) both arise from and are based on the same set of facts. Clearly, plaintiffs' federal and state claims are intertwined. Moreover, the same alleged conduct of defendants is the basis of plaintiffs' causes of action: their claim that Chrysler breached the collective bargaining agreement, their claim that the Union breached its duty of fair representation and violated the Union constitution and bylaws, and their state law misrepresentation claim. The court finds that plaintiffs' third cause of action, to the extent that it purports to assert a state law claim for misrepresentation, is preempted by the pervasive scheme of federal labor law. *Local 926, International Union of Operating Engineers, AFL–CIO*, 460 U.S. at 676, 103 S.Ct. at 1458. The doctrine of federal preemption accordingly dictates that this case be decided exclusively by the applicable federal labor law. See, e.g., *Davis Co. v. United Furniture Workers*, 674 F.2d 557 (6th Cir.1982), *cert. denied*, 459 U.S. 968, 103 S.Ct. 296, 74 L.Ed.2d 279 (1982) (Tennessee libel law preempted by federal labor law); *Fristoe v. Reynolds Metal Co.* 615 F.2d 1209 (9th Cir.1980); *Williams v. Pacific Maritime Ass'n*, 421 F.2d 1287 (9th Cir.1970); *Avco Corp. v. Aero Lodge No. 735 IAM*, 376 F.2d 337 (6th Cir.1967), *aff'd*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126, *reh'g denied*, 391 U.S. 929, 88 S.Ct. 1801, 20 L.Ed.2d 670 (1968).

Plaintiffs move the Court for reconsideration of "its decision of January 25, 1985 denying Plaintiffs' Motion to Compel answers to interrogatories." Upon review of the record in this case, the Court finds that it issued no order on January 25, 1985. The court assumes that plaintiffs seek reconsideration of the Court's September 25, 1985 memorandum and order denying the August 27, 1985 motion of plaintiffs to compel, as having been filed untimely. The subject interrogatories were both served on Chrysler on May 19, 1985 and filed with the Court on May 24, 1985. Upon consideration and for the same reasons stated by the Court in its September 25, 1985 memorandum and order, the Court finds plaintiffs' motion for reconsideration to be not well taken. Accordingly, the Court will deny said motion.

Plaintiffs move both for reconsideration of the Court's September 25, 1985 memorandum and order denying plaintiffs' motion for leave to file a third amended complaint, and for leave to file a supplemental memorandum in support of the aforesaid motion for leave to file a third amended complaint. In its memorandum and order of September 25, 1985, the Court fully addressed the issues raised by plaintiffs' instant motion. Plaintiffs correctly observe that at the time the Court issued the aforesaid memorandum and order, trial of this case was scheduled for October 1, 1985. However, at a pretrial conference held September 30, 1985, the Court set this cause for trial on April 22, 1986 with a backup trial date of July 15, 1986. By its pretrial order of October 3, 1985, the Court ordered that both discovery and motion practice remain closed. This case is presently the number one case for trial commencing April 22, 1986. Upon consideration and for the same reasons stated at length by the Court in its September 25, 1985 memorandum and order, the Court finds plaintiffs' motion and their arguments advanced in support thereof to be not well taken. Accordingly, the Court will deny said motion.

Defendant Union moves this Court to strike plaintiffs' jury demand on the grounds that plaintiffs, in essence, have no statutory right, either express or implied,

to a jury trial in this hybrid § 301/fair representation action and that plaintiffs have no right under the Seventh Amendment to the United States Constitution to a jury trial. Referencing the three-prong inquiry enunciated in *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), defendant Union asserts that plaintiffs' hybrid § 301/fair representation action is not in the nature of a suit at common law and, therefore, no premerger of law and equity custom of entitlement to a jury trial exists and that the remedies sought by plaintiffs are, in fact, equitable in nature. The Union argues that both because a close relationship exists between fair representation and unfair labor practice actions and because Congress did not authorize jury trials for unfair labor practice actions, "had Congress considered the issue, it would not have authorized jury trials for breach of the duty of fair representation actions." The Union further argues that its duty of fair representation is rooted in well established equity principles related to fiduciary responsibility. The Union asserts, albeit implicitly, that plaintiffs' claim for punitive damages is frivolous and, therefore, should be given no weight by the Court in its determination of the right to jury trial issue. The Union maintains that, in any event, punitive damages may not be assessed in fair representation actions. Finally, the Union asserts that the current rule of the Sixth Circuit is that a jury trial is unavailable for claims under 29 U.S.C. § 411.

Plaintiffs complaint contained a timely jury demand. Plaintiffs assert that they expressly claim damages for lost wages, lost benefits, lost seniority rights and for severe mental and emotional distress, and that they seek declaratory and injunctive relief. Plaintiffs contend that under the three-prong test of *Ross v. Bernhard, supra,* plaintiffs are entitled to a jury trial in accordance with the Seventh Amendment's guarantee. Plaintiffs argue that since the nature of the remedy sought is of primary importance with respect to the right to jury trial issue, a jury trial is appropriate in an action under § 301 of the LMRA, 29 U.S.C. § 185, when a legal remedy such as compensatory damages for severe mental and emotional distress and punitive damages is requested. Plaintiffs further argue that a right to a jury trial exists for a claim for damages under § 101 of the LMRDA, 29 U.S.C. § 411 whether or not equitable relief also is requested. Plaintiffs assert that punitive damages are recoverable for a claim brought under 29 U.S.C. § 411 where a plaintiff has demonstrated that a union has acted with malicious intent. Plaintiffs contend that since a § 301 cause of action "is merely a breach of contract claim" and since breach of the duty of fair representation has been characterized as a common law tort, both of which causes of action were recognized at common law, the Seventh Amendment preserves the right of jury trial as to the issues raised by said causes of action. Plaintiffs argue that the legal issues presented by their action are not incidental to the equitable issues so raised. Finally, plaintiffs assert that the issues raised by their § 301 claim are well within the practical abilities of jurors.

Plaintiffs acknowledge that their instant claim against Chrysler is for breach of the subject collective bargaining agreement and that their claim against the Union is for breach of the Union's duty of fair representation. Plaintiffs have also alleged that the Union violated § 101 of the LMRDA, 29 U.S.C. § 411 by failing "to inform Plaintiffs or to allow ... Plaintiffs the opportunity to ratify the abrogation of their recall rights." (p. 2, plaintiffs' memorandum contra Union's motion to strike jury demand). Notwithstanding, plaintiffs state that they "have now learned that there has been no agreement abrogating their 'recall rights.'" (p. 2, plaintiffs' memorandum contra Union's motion to strike jury demand).

As the Court stated *supra,* plaintiffs' action is a hybrid § 301/fair representation claim brought under § 301 of the LMRA, 29 U.S.C. § 185. *DelCostello,* 402 U.S. at 164–65, 103 S.Ct. at 2290–91. The right to bring an unfair representation action against a union is one which is judicially implied from the NLRA, 29 U.S.C. § 159(a), *DelCostello,* 462 U.S. at 164, 103 S.Ct. at

2290, and Congress has not specified what remedies are available in such suits. *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 47, 99 S.Ct. 2121, 2125, 60 L.Ed.2d 698 (1979). As a result, a judicially created and implemented remedial scheme has developed for this judicially implied cause of action. *Id.*, at 47, 47 n. 9, 99 S.Ct. at 2125 n. 9.

 Punitive damages are generally not recoverable in an action brought under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for breach of a collective bargaining agreement by an employee. See *Murphy v. International Union of Operating Engineers, Local 18*, 774 F.2d 114, 134 (6th Cir.1985), citing, *Farmer v. ARA Services, Inc.*, 660 F.2d 1096, 1106–07 (6th Cir.1981); *Hechenberger v. Western Electric Co., Inc.*, 570 F.Supp. 820, 822 (E.D.Mo.1983), *aff'd*, 742 F.2d 453 (8th Cir. 1984), *cert. denied*, 469 U.S. 1212, 105 S.Ct. 1182, 84 L.Ed.2d 330 (1985), and citing, *Tippett v. Liggett & Meyers Tobacco Co.*, 316 F.Supp. 292, 298 (M.D.N.C.1970). See also *Canton Printing Pressmen and Assistants Union No. 241 v. Canton Repository*, 577 F.Supp. 455, 459 (N.D.Ohio 1983); *Dian v. United Steelworkers of America*, 486 F.Supp. 700, 706 (E.D.Pa.1980), citing, *Local 127, United Shoe Workers of America, AFL–CIO v. Brooks Shoe Manufacturing Co.*, 298 F.2d 277 (3d Cir.1962) (en banc) (per curiam). To the extent that such damages are recoverable, an award for same must be based on conduct which is more than merely intentional. Conduct which justifies an award for punitive damages must be "outrageous or extraordinary." *Butler v. Local Union 823, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 514 F.2d 442, 454 (8th Cir. 1975), *cert. denied*, 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975). The Court finds that plaintiffs' allegation of "intentional conduct" with respect to Chrysler, does not, in the opinion of this Court, suffice to support a demand for punitive damages.

 The fundamental purpose of unfair representation suits is simply to compensate an employee for injuries caused by violation of his rights. *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. at 48, 99 S.Ct. at 2126. Because general labor policy disfavors punishment, and the adverse consequences of punitive damages awards could be substantial, punitive damages are not recoverable against a union for breach of its duty of fair representation. *Id.*, at 52, 99 S.Ct. at 2128. See also *Vaca v. Sipes*, 386 U.S. 171, 195, 87 S.Ct. 903, 919, 17 L.Ed.2d 842 (1967); *Farmer v. ARA Services, Inc.*, 660 F.2d 1096, 1106 (6th Cir.1981); *Rogers v. Fedco Freight Lines*, 564 F.Supp. 1169, 1174 (S.D.Ohio 1983); *Williams v. E.I. du-Pont de Nemours Company*, 581 F.Supp. 791, 793 (M.D.Tenn.1983).

 The Seventh Amendment to the United States Constitution, in pertinent part, provides that "[i]n suits at common law, ... the right of trial by jury shall be preserved...." The Seventh Amendment thus preserves the right which existed under the English common law when the Amendment was adopted. *National Labor Relations Board v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48, 57 S.Ct. 615, 629, 81 L.Ed. 893 (1937); *Baltimore & Carolina Line, Inc. v. Redman*, 295 U.S. 654, 657, 55 S.Ct. 890, 891, 79 L.Ed. 1636 (1935). The Amendment has no application to cases where the recovery of money damages is merely an incident to equitable relief. *National Labor Relations Board*, 301 U.S. at 48, 57 S.Ct. at 629.

The scope of the Seventh Amendment guaranty encompasses suits in which legal rights are to be determined, as contrasted with those in which equitable rights and remedies alone are determined. *Cox v. C.H. Masland & Sons, Inc.*, 607 F.2d 138, 142 (5th Cir.1980), citing, *Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). A key distinction between law and equity has historically been that the former deals with money damages and the latter concerns injunctive relief. However, this distinction has been blurred by court decisions indicating that not all money damages claims will be deemed "legal." *Hildebrand v. Board of Trustees of Michigan*

*State University*, 607 F.2d 705, 708 (6th Cir.1979) (citations omitted).

In *Ross*, the Supreme Court established three criteria for deciding when a right to a jury trial exists:

[F]irst, the pre-merger custom with reference to such questions; second, the remedy sought; and third, the practical abilities and limitations of juries.

*Ross v. Bernhard*, 396 U.S. at 538 n. 10, 90 S.Ct. at 738 n. 10.

The Sixth Circuit has decided that the primary focus to be made when determining whether a jury trial right exists is the nature of the relief sought. *Hildebrand*, 607 F.2d at 708. Under the law of this circuit, the remedy of lost wages (back pay) constitutes equitable relief. See, e.g., *Id.; Moore v. Sun Oil Co. of Pennsylvania*, 636 F.2d 154, 156 (6th Cir.1980); *Harris v. Richards Manufacturing Co.*, 675 F.2d 811, 815 n. 2 (6th Cir.1982). If the remedy sought is an injunction, lost wages, lost benefits, or reinstatement, that is, equitable relief, no right to a jury trial attaches. *Hildebrand*, 607 F.2d at 708. But, in the ordinary case, if the relief sought includes actual or compensatory damages and/or punitive damages, then a right does exist to trial by jury. *Id.*

 The Court is of the opinion that plaintiff has no statutory right to a jury trial. Neither the express language nor the congressional intent of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, support a claim of right to trial by jury. Cf. *National Labor Relations Board v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937). Nor are plaintiffs, under the prevailing law of this circuit, entitled to a jury trial with respect to their claim under § 101 of the LMRDA, 29 U.S.C. § 411. *McGraw v. United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada*, 341 F.2d 705, 709 (6th Cir.1965). This Court is cognizant of the fact that the *McGraw* decision has been questioned by several other circuits, see, e.g., *Quinn v. DiGiuli-*

*an*, 739 F.2d 637, 645 (D.C. Cir.1984); *Feltington v. Moving Picture Machine Operators Union Local 306 of I.A.T.S.E.*, 605 F.2d 1251, 1257–58 (2d Cir.1979), *cert. denied*, 446 U.S. 943, 100 S.Ct. 2169, 64 L.Ed.2d 799 (1980), and that the issue of its continued vitality or viability has, on occasion, been raised by the Sixth Circuit. See *Hildebrand*, 607 F.2d at 708 n. 4; *Shimman v. Frank*, 625 F.2d 80, 101 (6th Cir. 1980). Notwithstanding, *McGraw* remains the rule of the Sixth Circuit and, thus, is dispositive of the right to jury trial issue with respect to plaintiffs' claim under 29 U.S.C. § 411.

Plaintiffs seek lost wages, lost benefits, lost seniority rights declaratory and injunctive relief, damages for severe mental and emotional distress, punitive damages, and "such other and further relief as this Court may deem just and equitable."

 The Court finds that the essence of plaintiffs claim, fairly stated, is a request for remedial relief in the form of the right to return with full seniority to plaintiffs' "home" Chrysler plants. The Court has found that plaintiffs are not entitled to a jury trial as to their 29 U.S.C. § 411 claim. Nor may punitive damages be recovered by plaintiffs under their hybrid § 301/fair representation claim. Moreover, the Court finds that plaintiffs' claim for money damages clearly is merely an incident to the equitable remedial relief plaintiffs seek. *National Labor Relations Board*, 301 U.S. at 48, 57 S.Ct. at 629; *McGraw*, 341 F.2d at 709.

Plaintiffs' action is not a suit at common law, nor is it in the nature of such a suit. Indeed, plaintiffs' hybrid § 301/fair representation action is one which was unknown to the common law. It is, most accurately, in the nature of a statutory proceeding. Applying the *Ross* criteria, the Court finds that plaintiffs' action and the relief therein sought are equitable in nature. Further, the Court finds plaintiffs' argument that their prayer for "such other and further relief as this Court may deem just and equitable" constitutes a prayer for a remedy at law in the form of damages entitling plaintiffs to a jury trial, to be without

merit. See, e.g., *Harris v. Richards Manufacturing Co.*, 675 F.2d 811, 815 (6th Cir. 1982). Accordingly, the Court will grant defendant Union's motion to strike plaintiffs' jury demand.

By its motion for summary judgment, defendant GDLS moves this Court to dismiss GDLS on the ground that plaintiffs fail to state a claim against GDLS upon which relief can be granted for breach of a collective bargaining agreement because GDLS had no contractual or other legal authority to prohibit its Lima, Ohio tank plant employees from transferring to Chrysler Corporation facilities and, alternatively, on the ground that even if plaintiffs could have stated a valid cause of action against GDLS for breach of a collective bargaining agreement, such cause of action is time-barred by the applicable six month statute of limitations.

In their response to defendant GDLS's motion for summary judgment, plaintiffs opine that GDLS cannot prevail on its statute of limitations defense. Notwithstanding, plaintiffs state "[d]espite extensive discovery Plaintiffs had [sic] been unable to uncover any facts which would support a claim against ... [GDLS ;m] oreover, Plaintiffs were more than willing to dismiss ... [GDLS] over a year ago." (Plaintiffs' response to defendant GDLS' motion for summary judgment). Accordingly, the Court elects to treat GDLS' motion *sub judice* as a motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon relief can be granted.

Defendant Union opposes dismissal of GDLS from this action on the ground that in the event "the Court deems it appropriate to revise both the Chrysler and General Dynamics labor agreements, it would be improper to leave the UAW and Chrysler with a group of workers [plaintiffs herein] whose pension and SUB benefits have been adversely affected [without] ... the necessary trust fund adjustments between General Dynamics and Chrysler" which adjustments this Court could mandate if GDLS remained a party to this litigation. The Court is unaware of any pending cross-claim in this action by the UAW against GDLS. The Court finds the UAW's argument to be unpersuasive and, therefore, will grant the motion of GDLS to dismiss.

Defendant Chrysler and the Union defendants move for summary judgment on the ground that there is no issue as any fact which is material to the issues *sub judice* and that they are entitled to judgment as a matter of law.

Chrysler asserts that at all times pertinent to this lawsuit, defendant UAW was the exclusive collective bargaining agent for Chrysler's employees including plaintiffs, with which agent and not individual employees, Chrysler was legally required to negotiate those matters which are the subject of this lawsuit. Chrysler further asserts that it lawfully did so negotiate such matters with the UAW. Chrysler maintains that it has fully complied with all of its agreements with the Union which are the subject of this litigation. Chrysler further maintains that since the Union has not unlawfully breached its statutory duty of fair representation as plaintiffs' exclusive collective bargaining agent, plaintiffs cannot maintain this action against either the Union or Chrysler. Chrysler contends that, in any event, plaintiffs' instant hybrid § 301/fair representation action is barred by the applicable six month statute of limitations.

Plaintiffs submit that the various agreements, contracts, and letters and memoranda of understanding at issue in this lawsuit are themselves contradictory. Plaintiffs assert that they have not been separated (laid off) from GDLS' Lima, Ohio tank plant and, therefore, § 49 (loss of seniority) rather than § 65 (work opportunity for laid off employees) is the provision of the 1979 agreement which is determinative of plaintiffs' seniority rights with Chrysler. Plaintiffs claim that due to the sale of Chrysler Defense Inc. to General Dynamics, § 65 of the 1979 agreement is not applicable to them as they are no longer employees of other plants of Chrysler. Plaintiffs contend that after September 14, 1982, the 1979 agreement was not applicable to the Lima, Ohio tank plant. Plaintiffs assert that the 1979 agreement has not expired,

only that it has been amended, and that none of the circumstances delineated in § 49 of the 1979 agreement triggering loss of seniority, have, in fact, occurred. Plaintiffs contend that, accordingly, unless their seniority rights have been either negotiated away or abrogated by consent of the parties, such rights remain in effect. Plaintiffs maintain that their recall/seniority rights as to their Chrysler "home" plants, were not the subject of negotiations between the parties, nor have plaintiffs consented to the abrogation of such rights. Plaintiffs contend that their seniority/recall rights to "home" Chrysler plants have not been bargained away and, therefore, such rights exist irrespective of which collective bargaining agreement applies to plaintiffs.

Plaintiffs argue that absent explicit contractual language extinguishing their seniority/recall rights, Chrysler's failure to recall plaintiffs under either § 65 or § 61 of the 1979 agreement, constitutes a breach of the applicable collective bargaining agreement. Plaintiffs claim that Chrysler breached the 1979 agreement either by passing over plaintiffs for recall or by hiring new employees "off the street."

Plaintiffs deny that they were informed prior to November 11, 1983 that the Union's position was that plaintiffs' recall/seniority rights with Chrysler had been eliminated. Plaintiffs contend that they were not informed during the ratification meeting of the September 27, 1982 agreement of the loss of their seniority/recall rights. Plaintiffs claim that it was not until November 11, 1983 that they first learned that the UAW and Chrysler had entered into an agreement terminating plaintiffs' recall and seniority rights. Plaintiffs argue their cause of action against Chrysler did not accrue until the loss of their seniority rights was announced or until they knew or reasonably should have known that they had been passed over for recall. Plaintiffs argue that whenever their cause of action accrued, the running of the statute of limitations with respect thereto was tolled because of Chrysler and the Union's concerted activity to deliberately conceal that Chrysler intended to breach the 1979 collective bargaining agreement by not recalling plaintiffs, that Chrysler actually passed over plaintiffs for recall, and the existence of the March 16, 1982 agreement between the UAW and GDLS. Plaintiffs argue that the applicable statute of limitations was tolled by the Union's fraudulent misrepresentation and concealment as to the loss of their seniority rights. Plaintiffs argue that since no proof exists as to when their cause of action accrued, the applicable statute of limitations may not be employed to bar assertion of their cause of action.

In its motion for summary judgment, defendant Union asserts that with respect to plaintiffs' Chrysler "home" plant recall/seniority rights, three agreements are relevant: the May 18, 1982 and June 7, 1982 letters of understanding and the September 27, 1982 collective bargaining agreement between the UAW and GDLS. The Union contends that during July, 1982 the aforesaid letters of understanding were explained to the affected union membership at the GDLS Lima tank plant and that the September, 1982 collective bargaining agreement between the UAW and GDLS was submitted for ratification and simultaneously explained to all local union memberships, including the Lima tank plant local, covered by said agreement. The Union insists that the 1982 agreement between GDLS and the UAW does not contain language similar to either § 65 of the 1979 agreement between Chrysler and the UAW or the aforesaid letters and memoranda of understanding, nor does it contain any other provision allowing either former CDI employees or GDLS employees return/seniority rights to "home" Chrysler plants. The Union acknowledges that it refused to file or further process grievances filed by several of the plaintiffs regarding a perceived refusal to allow them to return or be recalled to their "home" Chrysler plants, based on its determination that said grievances were meritless.

The Union claims that it is entitled to summary judgment as to plaintiffs' breach of duty of fair representation claim either because the Union's actions with respect

both to the aforesaid relevant agreements and to plaintiffs' grievances were not arbitrary, discriminatory or in bad faith or because neither Chrysler nor GDLS breached its respective collective bargaining agreement with the UAW. The Union contends it is entitled to summary judgment as to plaintiffs' 29 U.S.C. § 411 claim because plaintiffs have failed to state a claim under § 101 of the LMDRA for which relief can be granted against the Union. The Union maintains that it is further entitled to summary judgment because plaintiffs have failed to exhaust available internal union remedies prior to commencing this action.

Defendant Union contends that, in any event, all of plaintiffs' claims are time-barred by the applicable six month statute of limitations. The Union maintains, in essence, that all of the aforesaid agreements relevant to plaintiffs' Chrysler "home" plant return/seniority rights both were consummated and became effective prior to six months preceding the date on which plaintiffs commenced this action, and, similarly, that said agreements were explained to the membership of plaintiffs' UAW local union earlier than six months preceding the date plaintiffs commenced this action. The Union further maintains that additionally, the 1979 agreement between Chrysler and the UAW expired earlier than six months preceding the commencement date of this lawsuit. Defendant Union argues that, therefore, plaintiffs both discovered or through reasonable diligence should have discovered the existence of the three agreements which plaintiffs claim abrogated their "home" plant return/seniority rights and knew or reasonably should have known the content of said agreements with respect to the loss of their Chrysler "home" plant return/seniority rights earlier than six months preceding the date on which plaintiffs commenced this action. The Union further argues that, accordingly, plaintiffs' causes of action accrued, if at all, more than six months before plaintiffs filed this lawsuit. The Union contends that plaintiffs' instant action having been commenced more than six months after the accrual of their causes of action, are barred by the applicable statute of limitations.

Plaintiffs begin their opposition to defendant Union's motion for summary judgment by insisting that the Union has failed to set forth the facts material to the issues *sub judice* in a light most favorable to plaintiffs. Plaintiffs claim that the 1979 agreement, as the same affected plaintiffs' Chrysler "home" plant recall/seniority rights, did not expire, rather, that it was only amended. Plaintiffs declare their primary argument is that the 1979 agreement, never having been altered, is in full force and effect. Plaintiffs argue that their Chrysler "home" plant recall/seniority rights have not been extinguished because of the unequivocal language of the 1979 agreement and because said rights lie with their "home" Chrysler plants which were still covered by the 1979 agreement as amended.

Plaintiffs advance that seniority is a creature of collective bargaining agreements and does not exist apart from them. Plaintiffs argue that in order to modify or extinguish seniority rights thus created, specific unequivocal language must be employed in such an agreement to effectuate modification or termination thereof. Although plaintiffs acknowledge that the 1982 agreement contains no language either providing for inter-corporation transfer of GDLS employees to Chrysler or allowing GDLS employees who were former Chrysler workers that through work opportunity became CDI employees at the Lima tank plant, to return with seniority to their "home" Chrysler plants, plaintiffs contend that none of the agreements purportedly extinguishing plaintiffs recall/seniority rights contains specific unequivocal language to that effect. Plaintiffs maintain that they never received copies of the May 18, 1982 and June 7, 1982 letters of understanding. They further maintain that notwithstanding the July, 1982 meeting with Homer Jolly, it was not until November 11, 1983 that they became aware of either the aforesaid letters of understanding or the March 16, 1982 agreement between the UAW and GDLS or of the fact that their recall rights were effectively terminated as of September 14, 1982. Plaintiffs further

maintain that neither the Union nor Chrysler informed plaintiffs at either the July, 1982 meeting relative to the letters of understanding or the September 27, 1982 ratification meeting that their recall/seniority rights terminated as of September 14, 1982. Plaintiffs claim that they were not told at the UAW Local No. 2075 September 27, 1982 ratification meeting that they could not return with seniority to their former Chrysler "home" plants.

Plaintiffs contend that the Union breached its duty of fair representation to plaintiffs by clearly acting beyond a wide range of reasonableness with respect to their Chrysler "home" plant recall/seniority rights. Plaintiffs argue that the Union breached its duty to fairly represent plaintiffs both by entering into agreements abrogating their recall/seniority rights and by misleading plaintiffs in furtherance of GDLS and Chrysler's interests in keeping their respective work forces in tact. Plaintiffs further argue that Chrysler either breached the 1979 collective bargaining agreement or, in the alternative, anticipatorily breached said agreement. Plaintiffs claim the Union breached its duty of fair representation when it failed to inform Local 2075 members of the UAW/Chrysler joint position that plaintiffs' recall/seniority rights expired as of September 14, 1982. Plaintiffs maintain that the Union's conduct with respect to the handling of plaintiffs' grievances has been perfunctory, arbitrary and in bad faith.

Plaintiffs assert that in the event the Court holds that the May 18, 1982 and June 7, 1982 agreements terminated the 1979 agreement as to plaintiffs, the UAW and its locals violated § 101 of the LMRDA by depriving plaintiffs of their right to ratify collective bargaining agreements. Plaintiffs argue that their cause of action under § 101 of the LMDRA accrued when they knew or should have known of the existence of said agreements. However, plaintiffs declare their new position is that such actions by the UAW although unlawful are not now actionable because neither the May 18, 1982 and June 7, 1982 letters of understanding nor the March 16, 1982 agreement between the UAW and GDLS

altered or extinguished any of plaintiffs' rights.

Plaintiffs insist that their causes of action against Chrysler and the UAW did not accrue until they knew or reasonably should have know that Chrysler breached the 1979 agreement by failing to recall plaintiffs. They further insist that Chrysler's intent not to recall them was not communicated to plaintiffs until November 11, 1983. Plaintiffs argue that since the collective bargaining agreement applicable to them remained unchanged as to recall/seniority rights, their causes of action can only accrue upon breach of the existing collective bargaining agreement. Acknowledging that their causes of action are subject to a six-month statute of limitations period, plaintiffs argue that it was not until November 11, 1983 that they learned of the May 18, 1982 and June 7, 1982 letters of understanding, of the March 16, 1982 UAW/GDLS agreement, and of Chrysler's intent not to recall plaintiffs with seniority to their "home" plants.

Plaintiffs argue that defendants have not affirmatively demonstrated that plaintiffs knew or should have known of the unilateral termination of their recall/seniority rights as a result of the 1982 collective bargaining agreement between the UAW and GDLS. Plaintiffs conclude that their causes of action against Chrysler and the UAW accrued November 11, 1983 at the earliest, and that their instant action, having been commenced March 23, 1984, is timely. Notwithstanding, in their September 24, 1985 supplemental memorandum plaintiffs argue that because of the Public Review Board's decision as to Joe Gaw's appeal, plaintiffs' cause of action accrued only as of August 30, 1985. Plaintiffs assert that, in any event, the fraudulent concealment of material facts by both Chrysler and the UAW tolled the running of the applicable statute of limitations period. Plaintiffs contend that the UAW concealed the letters of understanding, and the March 16, 1982 UAW/GDLS agreement until November 11, 1983, and that both the UAW and Chrysler actively concealed the fact that Chrysler intended not to recall

plaintiffs with seniority to their respective "home" plants. Finally, plaintiffs maintain that they either have exhausted or should be excused from exhausting all internal Union remedies.

Plaintiffs contend that neither Chrysler nor the Union is entitled to summary judgment. Further, they assert that a considerable dispute exists with respect to the Union's "involvement both prior to and after the sale of CDI to General Dynamics," the intent of the respective parties both as to what the collective bargaining agreements were to cover and as to the respective expiration dates of each, whether or not the Union or Chrysler informed plaintiffs that their Chrysler "home" plant recall/seniority rights expired September 14, 1982, whether plaintiffs' grievances are meritorious, which collective bargaining provision is applicable, when plaintiffs' causes of action accrued, and whether Chrysler or the Union fraudulently concealed material facts from plaintiffs.

Plaintiffs maintain that summary disposition of this case is inappropriate. Plaintiffs advance that the essence of their complaint against Chrysler and the Union is that under the unequivocal language of the applicable collective bargaining agreement, their recall/seniority rights were never extinguished and they continue to exist, that Chrysler failed to honor said rights when it did not recall plaintiffs to their "home" plants, and that the Union failed to enforce said recall/seniority rights already enjoyed by plaintiffs, in breach of its duty of fair representation.

Defendants have moved, pursuant to Fed.R.Civ.P. 56(b), for summary judgment. Fed.R.Civ.P. 56(c), in pertinent part, provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(e), in pertinent part, provides that "[w]hen a motion for summary judgment is made and supported ..., an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or ... otherwise ..., must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall ben entered against him."

Summary judgment is appropriate and may be granted only where there is no genuine issue with respect to the material facts of the case. *Mozert v. Hawkins County Public Schools*, 765 F.2d 75, 78 (6th Cir.1985), *citing, County of Oakland v. City of Berkley*, 742 F.2d 289, 297 (6th Cir.1984); *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1985). A court may not properly resolve disputed questions of fact in a summary judgment decision, and if a disputed question of material fact exists, the court should deny the motion for summary judgment and proceed to trial. See *In re Atlas Concrete Pipe, Inc.*, 668 F.2d at 908. Indeed, the very purpose of a motion for summary judgment is to eliminate a trial where it would be unnecessary and merely result in delay and expense. *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319, 1324 (6th Cir.1983). Although summary judgment is a useful and often efficient device for deciding appropriate cases, it must be employed only with extreme caution for it operates to deny a litigant his day in court. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.1979), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). If the record evidence plainly reveals that no dispute as to any material fact exists, the case should be decided as a matter of law rather than be submitted to a jury. *Bouldis*, 711 F.2d at 1324, *citing, Davis-Watkins Co. v. Service Merchandise*, 686 F.2d 1190, 1197 (6th Cir. 1982), *cert. denied sub nom. Service Merchandise Co. v. Amana Refrigeration, Inc.*, 466 U.S. 931, 104 S.Ct. 1718, 80 L.Ed.2d 190 (1984). See also *Smith v. Hudson*, 600 F.2d at 64-65.

The United States Court of Appeals for the Sixth Circuit has interpreted Fed.R.Civ.P. 56(c) to require that "the District court ... review the entire record before deciding whether to render a deci-

sion on the merits." *Smith v. Hudson*, 600 F.2d at 64. Moreover, a party is never required to respond to a motion for summary judgment in order to prevail thereon since the burden of establishing the nonexistence of genuinely disputed material fact always rests with the movant. *Smith v. Hudson, supra, citing Adickes v. Kress & Co.*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 42 (1970) (other citations omitted).

In ruling on a motion for summary judgment, the Court's function is to determine with respect to any fact which is material to the issues *sub judice*, if any genuine issue exists, not resolve disputed factual issues, and to deny summary judgment if such an issue does exist. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Tee-Pak, Inc. v. St. Regis Paper Co.*, 491 F.2d 1193 (6th Cir. 1974). Further, "[i]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light for the party opposing the motion and against the movant." *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir.1962). If reasonable minds could differ as to a material fact in issue, then a genuine factual dispute exists and the motion for summary judgment must be denied.

Having thoroughly reviewed the entire record in this case—"the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits"—including the declarations of plaintiffs contained in their several responses to the motions for summary judgment and viewing said pleadings, depositions, affidavits, and the other materials on file in this case in a light most favorable to plaintiffs, the Court finds that there is no genuine issue as to any material fact which makes the granting of summary judgment inappropriate. The Court further finds that no genuine issue exists with respect to any fact which is material to the dispositive issue *sub judice*. The only remaining question is whether or not defendants are entitled to judgment as a matter of law. A limitation of action issue can be resolved as a matter of law if the undisputed facts establish the time when a plaintiff's cause of action accrued. *American Hotel Management Associates, Inc. v. Jones*, 768 F.2d 562, 568 (4th Cir.1985).

The Court has thoroughly reviewed the entire record in this case including the voluminous materials submitted by the parties relating to the motions *sub judice*. Upon consideration, the Court finds defendants' statute of limitations argument to be well taken. Accordingly, the Court will grant the motions for summary judgment of Chrysler and of the Union. Finding the statute of limitations issue to be dispositive of this case, the Court does not substantively reach the merits of the remaining issues presently *sub judice*.

Upon consideration, the Court finds that no genuine issue exists as to the following facts which are material to the statute of limitations issue. Plaintiffs are former employees of Chrysler whose conditions and terms of employment, *inter alia*, were governed by the October 25, 1979 production and maintenance collective bargaining agreement between Chrysler and the UAW, which agreement by its express terms "continue[d] in full force and effect until 11:59 P.M. September 14, 1982...." Plaintiffs are members of the UAW union. Due to economic conditions, plaintiffs were laid off from their respective Chrysler plants. Pursuant to work opportunity for laid-off employees (§ 65 of the 1979 agreement), plaintiffs transferred to Chrysler's Lima, Ohio tank plant. Section 65(b) of the 1979 agreement provided that under certain specific conditions, plaintiffs had the right to transfer with seniority to other plants of the national Chrysler–UAW bargaining unit including their respective "home" Chrysler plants. In March of 1982, Chrysler sold its defense operations including the Lima, Ohio tank plant to General Dynamics Corporation and General Dynamics and the UAW entered into an agreement which provided, *inter alia*, that GDLS would recognize the UAW as the exclusive bargaining agent for its employees including plaintiffs and that GDLS would abide by the terms of the 1979 agreement between the UAW and Chrysler

until said agreement expired on September 14, 1982. Plaintiffs' then local UAW unions while employed both by Chrysler until March 16, 1982 and by GDLS thereafter until September 14, 1982, were parties to and covered by the October 25, 1979 Agreement. A June 7, 1982 letter of understanding from Chrysler to the UAW in part, provides:

Interplant transfer rights are limited to plants within each corporation's [-Chrysler and General Dynamics-] bargaining units, and the parties agree that such transfers cannot include inter-company transfers from a Chrysler facility to a GDLS facility and vice versa. . . .

However, . . . the parties agree as follows.

1. An employee of CDI (now GDLS) who would otherwise qualify for the right to return to a Chrysler Corporation plant based on . . . Section 65(b) of the applicable Chrysler–UAW agreements, may exercise the opportunity to return to his former plant if indefinitely laid off by GDLS . . ., on or before September 14, 1982. Unless indefinitely laid off by that date, any such employee shall lose any right to return to Chrysler.

A May 18, 1982 letter of understanding from GDLS to the UAW essentially provided the same transfer right to then current employees of Chrysler who might subsequently be interested in returning to their former plants and "who had return rights to a GDLS facility under . . . Section 65(b) of the applicable Chrysler UAW agreement" in the event said employee was permanently laid off by Chrysler on or before September 14, 1982. The May 18, 1982 letter further provided that any right to transfer to an employee's former plant "must be exercised by September 14, 1982, and unless exercised by such date such employee loses any right to return to GDLS." In July of 1982, the Union had two meetings with the UAW Local Union No. 2075 membership of which plaintiffs are members at which, *inter alia*, the May 18, 1982 and June 7, 1982 letters of understanding were read to said membership. The October 25, 1979 agreement between Chrysler and the UAW expired September 14, 1982. Plaintiffs' Local UAW Union No. 2075 for the Lima, Ohio tank plant was neither a party to nor covered by the succeeding collective bargaining agreement between Chrysler and the UAW. Section 65—work opportunity for laid off employees—was amended by said new agreement between Chrysler and the UAW.

Subsequent to September 14, 1982, the UAW and GDLS entered into a collective bargaining agreement which covered, *inter alia*, UAW Local Union No. 2075 and to which agreement said local union was a party. A ratification meeting with respect to the 1982 collective bargaining agreement between GDLS and the UAW was held on September 27, 1982. The membership of UAW Local Union 2075 ratified the 1982 collective bargaining agreement between GDLS and the UAW. Neither of the respective post-September 14, 1982 collective bargain agreements between GDLS and the UAW and between Chrysler and the UAW provided for inter-corporation work opportunity transfer rights or for cross-national bargaining unit transfer rights. Nor did either of said post-September 14, 1982 agreements expressly or implicitly renew or extend the May 18, 1982 and June 7, 1982 letters of understanding. No plaintiff while working at the Lima, Ohio tank plant was indefinitely laid off either by Chrysler before March 16, 1982 when Chrysler sold CDI to GDLS or by GDLS before September 14, 1982 when both the October 25, 1979 agreement and the aforesaid letters of understanding expressly expired.

Federal labor law reflects the well established and strong federal policy favoring relatively rapid final resolution of labor disputes. See, e.g., *DelCostello*, 462 U.S. at 168, 103 S.Ct. at 2292; *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 63, 101 S.Ct. 1559, 1564, 67 L.Ed.2d 732 (1981); *Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 707, 86 S.Ct. 1107, 1114, 16 L.Ed.2d 192 (1966). The Supreme Court stated in *Wood v. Carpenter*, 101 U.S. 135 (Otto), 25 L.Ed. 807 (1879) that "[s]tatutes of limitations are vital to the welfare of society and are favored in the law." *Id.* at 139.

In *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the United States Supreme Court held, *inter alia*, that the six-month statute of limitations period imposed by § 10(b) of the NLRA, 29 U.S. § 160(b) applicable to unfair labor practice claims is the applicable statute of limitations period governing a hybrid § 301/fair representation claim. *Id.* at 154–55, 103 S.Ct. at 2285–86. The six month statute of limitations for hybrid § 301/fair representation claims announced in *DelCostello* is similarly applicable to a claim under § 101 of the LMDRA, 29 U.S.C. § 411. See, e.g., *Vallone v. Local Union No. 705, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 755 F.2d 520, 521–22 (7th Cir. 1984); *Adkins v. General Motors Corp.*, 573 F.Supp. 1188, 1201 (S.D. Ohio 1983), *aff'd*, 769 F.2d 330 (6th Cir.1985). Cf. *Shapiro v. Cook United, Inc.*, 762 F.2d 49, 51 (6th Cir.1985) (*per curiam*). The United States Court of Appeals for the sixth Circuit, joining the First, Second, Third, Fourth, Fifth, Seventh, Eighth and Eleventh Circuits, has ruled that the *DelCostello* decision establishing a six month statute of limitations for hybrid § 301/fair representation claims is to be given retrospective as well as prospective effect and, therefore, *DelCostello* is applicable to all cases pending at the time it was decided. *Smith v. General Motors Corp.*, 747 F.2d 372, 374–75 (6th Cir.1984) (*en banc*). Cf. *Shapiro v. Cook United, Inc., supra.*

The applicable six-month statute of limitations period reflects congressional indication of the proper balance between an employee's interest in vindicating his rights and the national interest in stable bargaining relationships and in finality in labor law and industrial peace. *Adkins v. International Union of Electrical, Radio & Machine Workers, AFL–CIO–CLC*, 769 F.2d 330, 335 (6th Cir.1985), *citing, DelCostello*, 462 U.S. at 171, 103 S.Ct. at 2294 (1983).

■ A hybrid § 301/fair representation action accrues no later than the time when a plaintiff knew or reasonably should have known that a breach of the duty of fair representation had occurred, even if some possibility of nonjudicial enforcement remained. *Former Frigidaire Employees Ass'n v. International Union of Electrical, Radio and Machine Workers, Local 801*, 573 F.Supp. 59, 62 (S.D. Ohio 1983), *aff'd sub nom. Adkins v. International Union of Electrical, Radio & Machine Workers, AFL–CIO–CLC*, 769 F.2d 330 (6th Cir.1985), and *quoting Dowty v. Pioneer Rural Electric Cooperative, Inc.*, 573 F.Supp. 155, 158 (S.D. Ohio 1983).

A hybrid § 301/fair representation claim accrues and the applicable statute of limitations beings to run when the claimant knows or reasonably should have known of the union's alleged breach of its duty of fair representation. *Dowty v. Pioneer Rural Electric Cooperation, Inc.*, 770 F.2d 52, 56 (6th Cir.1985), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 572, 88 L.Ed.2d 557 (1985).

"A claim accrues under section 10(b) [of the NLRA, 29 U.S.C. § 160(b)] when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Adkins*, 769 F.2d at 335, *citing, Shapiro v. Cook United*, 762 F.2d 49, 51 (6th Cir.1985) (*per curiam*); *Howard v. Lockheed-Georgia Co.*, 742 F.2d 612, 614 (11th Cir.1984) (*per curiam*); *Metz v. Tootsie Roll Industries*, 715 F.2d 299, 304 (7th Cir.1983), *cert. denied*, 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984).

Causes of action for breach of a collective bargaining agreement and breach of the duty of fair representation "based on entry into collective bargaining agreements accrue, and ... [the six-month statute of limitations period] starts to run, when the contract is signed." *United Independent Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1262, 1273 (7th Cir.1985).

■ Applying the standards for accrual to the undisputed facts of this case establishes that plaintiffs hybrid § 301/fair representation claim accrued no later than December 10, 1982, the date of the 1982 national and local agreement between the Union and Chrysler. Said 1982 agreement did not renew the May 18, 1982 and June 7, 1982 letters of understanding, nor did it

apply to plaintiffs UAW Local Union 2075, nor did it provide for either inter-corporation or cross-national bargaining unit work opportunity transfers. By July, 1982 plaintiffs knew or reasonably should have known that their subject Chrysler "home" plant recall/seniority rights would terminate September 14, 1982. By September 14, 1982, plaintiffs knew or reasonably should have known that the October 25, 1979 agreement between Chrysler and the UAW expired by its express terms. Further, by September 14, 1982, plaintiffs knew or reasonably should have known that the express prerequisite for returning to their "home" Chrysler plants with seniority had not occurred, to wit, being indefinitely laid off by GDLS before September 14, 1982. By September 27, 1982, plaintiffs knew or reasonably should have known that the 1982 collective bargaining agreement between the UAW and GDLS covered plaintiffs' UAW Local Union 2075, said 1982 agreement did not renew or extend the May 18, 1982 or the June 7, 1982 letters of understanding, and that said 1982 agreement did not provide for inter-corporation or cross-national bargaining unit work opportunity transfers.

By December, 1982 subsequent to ratification of the December 10, 1982 agreement between the UAW and Chrysler, plaintiffs knew or reasonably should have known that the Lima, Ohio tank plant UAW Local Union 2075 was not covered by said agreement, that the aforesaid letters of understanding were not renewed by said 1982 agreement, and that said 1982 agreement did not provide for inter-corporation or cross-national bargaining unit work opportunity transfer. In sum, the Court finds that plaintiffs' hybrid § 301 fair representation claim accrued no later than December 10, 1982 by which time plaintiffs discovered or in the exercise of reasonable diligence should have discovered the acts constituting either the alleged violation of the abrogation of their Chrysler "home" plant recall/seniority rights or the fact of defendants' agreement that plaintiffs' said "home" plant recall/seniority rights would terminate on September 14, 1982. Plaintiffs discovered or in the exercise of rea-

sonable diligence should have discovered that their Chrysler "home" plant recall/seniority rights were impaired or, as alleged, abrogated by the actions of defendants (the gravamen of their complaint), as early as July, 1982, and no later than the dates of ultimate ratification of the respective 1982 agreements between the UAW and GDLS and between the UAW and Chrysler. Finally, plaintiffs cause of action for the Union's violation of § 101 of the LMDRA, 29 U.S.C. § 411, for failure to permit plaintiffs to ratify both the aforesaid letters of understanding and the March 16, 1982 agreement between GDLS and the UAW accrued no later than July, 1982.

It is well established that the equitable tolling doctrine "is read into every federal statute of limitation." *Ott v. Midland-Ross Corp.*, 600 F.2d 24, 30 (6th Cir.1979), *quoting Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946). The traditional rule with respect to accrual of a cause of action is that a plaintiff must demonstrate fraudulent concealment of the critical facts before accrual will be postponed. *Diminnie v. United States*, 728 F.2d 301, 305 (6th Cir.1984), *cert. denied*, 469 U.S. 842, 105 S.Ct. 146, 83 L.Ed.2d 85 (1984).

The Sixth Circuit has stated that "[i]f the defendant made a misrepresentation of material fact for the purpose of inducing a plaintiff to delay suit or release him from liability, ... [plaintiff] is estopped to plead the statute of limitations or to interpose the release as a bar to suit, provided the plaintiff has acted in justifiable reliance upon the misrepresentation." *Ott v. Midland-Ross Corp.*, 600 F.2d 24, 31 (6th Cir. 1979).

██ Fraudulent concealment must consist of affirmative acts or representations which are calculated to, and in fact do, prevent the discovery of the cause of action. Mere silence of the defendant and failure by the plaintiff to learn of the right of action, alone, are not sufficient. *Curry v. A.H. Robbins*, 775 F.2d 212, 218 (7th Cir.1985).

After plaintiffs should have discovered that they had a cause of action, there is no tolling of the applicable statute of limitations period. See generally *Dayco v. Goodyear Tire & Rubber Co.*, 523 F.2d 389 (6th Cir.1975). Cf. *Norton-Children's Hospitals, Inc. v. James E. Smith & Sons, Inc.*, 658 F.2d 440, 444 (6th Cir.1981). The party alleging fraudulent concealment must plead the circumstances giving rise to it with particularity. See, e.g., *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d at 394. In order to establish fraudulent concealment tolling the running of the applicable statute of limitations period, plaintiffs must establish, "(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff[s] to discover the operative facts that are the basis of ... [their] cause of action within the limitations period; and (3) plaintiff[s]' ... due diligence until discovery of the facts." Id., at 394, *citing, Weinberger v. Retail Credit Co.*, 498 F.2d 552 (4th Cir.1974). An injured party has a positive duty to use diligence in discovering his cause of action within the limitations period. "Any fact that should excite his suspicion is the same as actual knowledge of his entire claim." *Dayco*, 523 F.2d at 394. Indeed, "the means of knowledge are the same thing in effect as knowledge itself." *Wood v. Carpenter*, 101 U.S. 135, 143 (Otto), 25 L.Ed. 807 (1879).

In order to toll the running of the statute of limitations period applicable to plaintiffs' causes of action based on the alleged fraudulent concealment of material facts by defendants, plaintiffs must establish that defendants affirmatively acted to induce delay on the part of plaintiffs in commencing their lawsuit. A plaintiff's ignorance of his cause of action does not, by itself, satisfy the requirements of due diligence, nor will it toll the statute of limitations. *Campbell v. Upjohn Co.*, 676 F.2d 1122, 1127 (6th Cir.1982), *citing, Akron Presform Mold Co. v. McNeil Corp.*, 496 F.2d 230, 234 (6th Cir.1974), *cert. denied*, 419 U.S. 997, 95 S.Ct. 310, 42 L.Ed.2d 270 (1974).

Plaintiffs' mere ignorance of language in or changes to the various agreements, by itself, did not satisfy the requirement of due diligence and was not, therefore, sufficient to toll the statute of limitations. *Shapiro v. Cook United, Inc.*, 762 F.2d 49, 51 (6th Cir.1985) (*per curiam*). In order to prove fraudulent concealment, plaintiffs must show that they failed to discover facts that serve as the basis of their cause of action despite due diligence on their part to discover same, and that the concealment was fraudulently committed by defendants. *Shapiro*, 762 F.2d at 51, *citing, Diminnie v. United States*, 728 F.2d 301, 305 (6th Cir.1984). Upon consideration, the Court finds plaintiffs' assertion of fraudulent concealment and their arguments advanced in support thereof, to be without merit. The Court further finds that plaintiffs have failed to establish the alleged fraudulent concealment of defendants to toll the statute of limitations applicable to their causes of action.

It is the general rule that a statute of limitations commences to run at the time the cause of action accrues. See Annot., 32 A.L.R.4th 260, 266 (1984). Accordingly, the Court holds that plaintiffs' causes of action against defendants accrued and the applicable statute of limitations period commenced to run no later than December 10, 1982.

The undisputed facts demonstrate that plaintiffs' Chrysler "home" plant return/seniority rights which they enjoyed under the 1979 agreement, terminated September 14, 1982. It is clear that plaintiffs' mere ignorance of their rights or of the terms or the effect thereof of the various agreements pertinent to this lawsuit, is not sufficient to overcome the limitations defense. *Dayco v. Firestone Tire & Rubber Co.*, 386 F.Supp. 546, 549 (N.D. Ohio 1974), *aff'd*, 523 F.2d 389 (6th Cir.1975), and *citing, Akron Presform Mold Co. v. McNeil Corp.*, 496 F.2d 230, 234 (6th Cir.1974). See also *Ashland Oil Co. of California v. Union Oil Co. of California*, 567 F.2d 984, 988 (Temp.Emer.Ct.App.1977), *cert. denied*, 435 U.S. 994, 98 S.Ct. 1644, 56 L.Ed.2d 83 (1978), and *citing, Wood v. Carpenter*, 101 U.S. 135, 143 (Otto), 25 L.Ed. 807 (1879).

Further, plaintiffs' filing of a grievance did not toll the running of the applicable statute of limitations period. See, e.g., *Vallone*, 755 F.2d at 522.

As to employees of the Lima, Ohio tank plant including plaintiffs, the October 25, 1979 collective bargaining agreement terminated September 14, 1982. Said termination was in accordance with the express terms of the 1979 agreement and the June 7, 1982 letter of understanding. The Court finds that at some point prior to six months preceding the date on which this lawsuit was commenced, plaintiffs discovered or, in the exercise of reasonable diligence, should have discovered the acts of defendants constituting the violations alleged by plaintiffs. *Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 304 (7th Cir.1983), *cert. denied*, 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984). The Court finds that plaintiffs' causes of action accrued and the applicable statute of limitations period began to run when plaintiffs discovered or in the exercise of reasonable diligence should have discovered the agreements between the defendants (the May 18, 1984 and June 7, 1982 letters of understanding and the September 27, 1982 GDLS/UAW agreement) which plaintiffs claim abrogated or extinguished their Chrysler "home" plant recall/seniority rights.

The Court finds that plaintiffs commenced this lawsuit on March 23, 1984. Having determined that plaintiffs causes of action accrued no later than December 10, 1982, that is, more than six months before this action was commenced, the Court concludes that plaintiffs' action having been filed more than six months after the accrual of their causes of action, is untimely and, accordingly, time-barred by the applicable six month statute of limitations. *DelCostello v. International Brotherhood of Teamsters, supra.*

THEREFORE, for the foregoing reasons, good cause appearing, it is

ORDERED that the motion of defendant Union to strike plaintiffs' jury demand be, and it hereby is, GRANTED; and it is

FURTHER ORDERED that plaintiffs' motion for reconsideration be, and it hereby is, DENIED; and it is

FURTHER ORDERED that plaintiffs' motion both for reconsideration and for leave to file a reply be, and it hereby is, DENIED; and it is

FURTHER ORDERED that defendant Chrysler's motion for leave to respond to plaintiffs' supplemental response be, and it hereby is, DENIED; and it is

FURTHER ORDERED that the motion of defendant General Dynamics Land Systems, Inc. to dismiss be, and it hereby is, GRANTED; and it is

FURTHER ORDERED that the motion of defendant Union for summary judgment be, and it hereby is, GRANTED; and it is

FURTHER ORDERED that the motion of defendant Chrysler for summary judgment be, and it hereby is, GRANTED.